UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CARL LAROCQUE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 23-cv-13252-ADB |
| | * | |
| CAROL MICI, DEAN GRAY, JAMES | * | |
| GERARDI, ROBERT DESCHENE, | * | |
| MATTHEW M. WISNEWSKI, CRAIG | * | |
| LUSSIER and DOES 1 through 11, *in their* | * | |
| *individual capacities*, | * | |
| | | |
| Defendants. | | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Prisoner Plaintiff Carl Larocque ("Plaintiff" or "Larocque") brings this action against

several Massachusetts Department of Correction ("MDOC") employees, including former

Commissioner of Correction for the Commonwealth of Massachusetts Carol Mici ("Mici"),

Robert Deschene ("Deschene"), Matthew M. Wisnewski ("Wisnewski"), Craig Lussier

("Lussier"), Dean Gray ("Gray"), James Gerardi ("Gerardi") (collectively, the "DOC

Defendants"), and Defendants Does 1 through 11 in their individual capacities ("Doe

Defendants" and, collectively with DOC Defendants, "Defendants").[1]  Plaintiff alleges, among

other things, that Defendants violated his rights under the United States Constitution by ignoring

---

[1] In his opposition to the DOC Defendants' motion to dismiss, Larocque agreed to dismiss all
claims against the Defendants in their official capacities.  [Opp'n at 9].

his mental health needs and using excessive force against him, and he also asserts several state-law tort claims arising from the same conduct.  [ECF No. 1 ("Complaint" or "Compl.")].  Now pending before the Court is DOC Defendants' motion to dismiss, [ECF No. 21], which is **<u>GRANTED</u>** in part and **<u>DENIED</u>** in part.

I.      BACKGROUND

The following facts are taken from the Complaint, the factual allegations of which are assumed to be true when considering a motion to dismiss.  See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).  As it may on a motion to dismiss, the Court has also considered "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice."  Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

A.      Factual Background

At all times of the relevant conduct, Larocque was a state prisoner at the Souza Baranoswki Correctional Center ("SBCC") in Lancaster, Massachusetts.  [Compl. ¶ 5].  Apart from Defendant Mici, all Defendants were, during the relevant time period, employees of the MDOC working at the SBCC, with Deschene holding the position of Lieutenant, Wisnewski and Lussier working as Correctional Officers, Gray as the Superintendent, and Gerardi as the Superintendent's Special Investigator at the SBCC.  [Id. ¶¶ 6–11].

1.      The Events of January 2, 2021

Sometime between December 2020 and the beginning of January 2021, Larocque became ill with COVID-19.  [Compl. ¶ 31].  As a result, he experienced severe pain, body-aches, coughing, vomiting, and difficulty breathing.  [Id.].

On January 2, 2021, while still experiencing COVID-19 symptoms, Larocque was placed in isolation inside SBCC's Health Services Unit ("HSU").  [Compl. ¶¶ 13, 32].  His cell was not suicide-resistant.  [Id. ¶ 36].  For example, a door separated the shower area from the rest of the cell, which meant that the shower area was not visible to an officer when looking through the

window on the cell door.  [Id.].  Other than an electronic tablet, Larocque was not allowed any

personal property, although he had specifically requested a television and radio, and he was

unable to see or hear any other prisoners.  [Id. ¶¶ 32–33].

While in isolation, Larocque grew fearful of becoming sicker or dying of COVID-19.

[Compl. ¶ 35].  He became distressed "regarding his severe symptoms, lack of medical and

mental health care, isolation in [the] HSU, his inability to call his supporters in the community,

lack of meaningful coping mechanisms and MDOC's staff indifference [toward] his suffering."

[Id.].  Larocque voiced these concerns to and asked for help from Doe Defendants 1 through 5.

[Id.].  On January 2, 2021, Larocque told Doe Defendants 1 through 5 repeatedly that he wanted

to move out of his HSU cell, as it reminded him of a traumatic event in his childhood.  [Id. ¶ 37].

He also repeatedly informed Doe Defendants 1 through 5 that he was experiencing a

mental health crisis and needed to see a mental health clinician.  [Compl. ¶ 38].  Larocque told at

least one Doe Defendant that he had suicidal ideation and made a gesture of hanging by his neck.

[Id. ¶ 40].  Instead of alerting medical staff and seeking medical assistance, the Doe Defendants

encouraged Larocque to commit suicide.[2]  [Id. ¶¶ 40, 42].  At that time, Larocque "had numerous

known risk factors for suicide, including prior suicide attempts, family history of suicide, serious

illness, single cell placement, history of abuse, history of substance use, history of severe

impulsivity, history of mental illness, and the length of his sentence."  [Id. ¶ 48].

---

[2] Although the Complaint states that Larocque told at least one of the Doe Defendants that he
wanted to kill himself, it is unclear which Doe Defendant he is alleging encouraged him to do it.
See [Compl. ¶¶ 40–41].

Unable to obtain the required support and with his mental health deteriorating, Larocque "tore a bed sheet into strips, tied a ligature around his neck, and twice attempted to hang himself in the shower" of his cell.  [Compl. ¶ 43].  His first attempt to hang himself failed.  [Id. ¶ 44].

After his second suicide attempt, Larocque was found unconscious on his cell floor. [Compl. ¶ 44].[3]  Defendants Deschene, Wisnewski, Lussier, and Doe Defendants 6 through 11 assembled and created a plan to conduct a forcible cell extraction.  [Id.].

According to Larocque, when he regained consciousness, Defendants Deschene, Wisnewski, Lussier, and Doe Defendants 6 through 11 had entered his cell and "punched his face and head repeatedly and continued to do so until medical staff responded."  [Compl. ¶¶ 45, 46].  Larocque alleges that they used force against him to punish him for inconveniencing them. [Id. ¶ 46].  When Larocque asked Defendant Lussier why he had punched him, Lussier denied striking him and told him to be "grateful" that he had "saved [Larocque's] life."  [Id. ¶ 53]. Following the incident but also on January 2, 2021, Defendant Wisnewski wrote a disciplinary report in which he asserted that Larocque had violated MDOC's rules and regulations during his suicide attempts.  [Id. ¶ 55].  Larocque, as a result of Defendants' conduct, suffered "physical injuries to his face, head and neck, mental distress, loss of appetite and sleep."  [Id. ¶ 71].

Sometime in early January 2021,[4] Larocque complained to the MDOC and elected officials about (i) the failure to provide adequate mental health care; (ii) his suicide attempts; (iii) Doe Defendant's encouragement of him committing suicide; and (iv) the deprivation of coping

---

[3] The Complaint is unclear as to how Larocque was discovered.  See generally [Compl.].

[4] In construing the facts favorably to Plaintiff, the Court assumes that Larocque's complaint was filed after the events of January 2, 2021.

mechanisms while in isolation.  [Compl. ¶ 49].  Larocque's complaints led to an investigation

conducted by Defendants Gray and Gerardi surrounding the events of January 2, 2021.  [Id. ¶¶

50, 51].  Around the same time, Larocque filed other grievances, which "were lost or

intentionally destroyed."  [Id. ¶ 51].

In early to mid-January 2021, Defendants Gray and Gerardi, presumably as part of the

investigation, told Larocque that they had watched footage of the January 2 incident.[5]  [Compl. ¶

58].  Larocque asserts they "false[ly] accused [him] of engaging in attention-seeking behavior

and . . . of faking his deteriorated mental state."  [Id.].  Larocque further asserts that Gray

instructed Gerardi to conduct a sham investigation to "clear all SBCC staff despite clear evidence

of wrongdoing."  [Id. ¶ 59].

## 2.    The Department of Justice Investigation

On October 22, 2018, the Department of Justice ("DOJ") notified the MDOC that it

would investigate Massachusetts' statewide prison system.  [ECF No. 1-1 at 4].  Among other

things, the DOJ's investigation focused on the constitutional rights of prisoners with serious

mental illnesses, including whether the MDOC provides prisoners in mental health crises with

constitutionally adequate mental health care and supervision to provide reasonable protection

from self-harm.  [Id.].  The DOJ published its findings in November 2020, ultimately concluding

---

[5] Based on the Complaint, it is unclear what footage Larocque is referencing given that he also
asserts that Defendants Deschene, Wisnewski, Lussier, and Doe Defendants 6 through 11 did not
use a video camera when entering his cell.  See [Compl. ¶ 44].  In drawing all reasonable
inferences in Larocque's favor, the Court assumes that other footage exists.

that MDOC had engaged in a pattern of failing to provide adequate supervision and mental health care to suicidal prisoners.  [ECF No. 1-1 at 3]; see also [Compl. ¶¶ 24–27].

### B.    Procedural History

Larocque filed the Complaint on December 31, 2023.  [Compl.].  On May 30, 2024, DOC Defendants Deschene, Gerardi, Gray, Lussier, Mici, and Wisnewski moved to dismiss, [ECF No. 21], Larocque opposed on July 3, 2024, [ECF No. 29 ("Opp'n")], and DOC Defendants filed a reply in support of their motion to dismiss on July 30, 2024, [ECF No. 32].

## II.    STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze them in the light most favorable to the plaintiff, and draw all reasonable inferences from those facts in favor of the plaintiff.  United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011).  Additionally, "a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice."  MIT Fed. Credit Union v. Cordisco, 470 F. Supp. 3d 81, 84 (D. Mass. 2020) (citing Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011)).  "[A] complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)), and set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024) (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)).  Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).

III.    **DISCUSSION**

A.    **Claims Against Doe Defendants**

Defendant Does 1-11 are currently unidentified and have not been served with the Complaint.  They are also not represented by counsel for the DOC Defendants or the DOC Legal Division.  [ECF No. 24 at 3 n.1].  Fictious parties may "only be used until such time as the actual identities can be learned."  Kemper Ins. Cos. v. Fed. Exp. Corp., 115 F. Supp. 2d 116, 125 (D. Mass. 2000), aff'd sub nom. Kemper Ins. Cos. v. Fed. Exp. Corp., 252 F.3d 509 (1st Cir. 2001). "[W]hen, as here, a party is ignorant of defendants' true identity, it is unnecessary to name them until their identity can be learned through discovery or through the aid of the trial court."  Id. (quoting Maclin v. Paulson, 927 F.2d 83, 87 (7th Cir. 1980)).  The Court accordingly orders Larocque to make diligent efforts to identify the Doe Defendants and, once their identifies are ascertained, to promptly amend the complaint and effectuate service; otherwise his claims against the Doe Defendants may be dismissed without prejudice.  Martínez-Rivera v. Sánchez Ramos, 498 F.3d 3, 8 n.5 (1st Cir. 2007) ("[O]nce those identities are revealed, the plaintiff should act promptly to amend the complaint to substitute the correct parties and to dismiss any baseless claims.").  As a practical matter, the Court therefore need not address Count I, the only claim directed solely at Doe Defendants (specifically, Defendant Does 1–5).

**B.    42 U.S.C. § 1983 – Constitutional Violations**

Larocque brings several constitutional claims against Defendants.  Specifically, he alleges that (i) Defendants Deschene, Wisnewski, and Lussier violated his rights under the Eighth and Fourteenth Amendments by using excessive force when responding to his suicide attempt, or alternatively, that they failed to intervene to prevent other Defendants from using excessive force (Count II); (ii) Defendants Mici and Gray violated his Eighth Amendment rights by failing to supervise and train their subordinates (Count III); and (iii) Defendants Gray and Gerardi violated his First Amendment rights by conducting a "sham investigation" of the suicide attempt and the correctional officers' response because of Larocque's prior filing of a lawsuit involving the SBCC (Count IV).  [Compl. ¶¶ 69–93].

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393–94, (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  Accordingly, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988); see also Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991) ("Under 42 U.S.C. § 1983, an aggrieved individual may sue persons who, acting under color of state law, abridge rights, immunities, or privileges created by the Constitution or laws of the United States.").

As a threshold matter, the DOC Defendants argue that Larocque fails to state a claim under § 1983 because he impermissibly treats § 1983 as a source of substantive rights and does not plead his allegations with particularity.  [ECF No. 24 at 14].  Neither assertion has merit. Larocque alleges that certain of his constitutional rights were violated and that these violations

were committed by Defendants acting under the color of state law, as is required for a § 1983 cause of action. West, 487 U.S. at 48. As to the purported particularity requirement, such a claim is plainly contrary to First Circuit precedent, which has firmly stated that "[a] section 1983 complaint need only comply with the liberal notice pleading standards of the Federal Rules." Wilson v. Town of Mendon, 294 F.3d 1, 10 (1st Cir. 2002) (internal quotations omitted).

The DOC Defendants further argue that the Prison Litigation Reform Act ("PLRA") forecloses Larocque's Eighth Amendment claim for compensatory damages because he does not allege more than a *de minimis* physical injury. [ECF No. 24 at 18–20]. As relevant here, Section 1997e(e) of the PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). Importantly, "[t]he First Circuit has not definitively ruled on the applicability [of the bar to recovery under § 1997e(e) where physical injury is not alleged in connection with constitutional claims]," nor has the First Circuit decided "whether [the PLRA] applies to nominal and punitive damages in addition to compensatory damages." Hudson v. MacEachern, 94 F. Supp. 3d 59, 67 (D. Mass. 2015) (citing Cryer v. Spencer, 934 F. Supp. 2d 323, 336 (D. Mass. 2013) (discussing circuit split)); but see Mattei v. Dunbar, 217 F. Supp. 3d 367, 380 (D. Mass. 2016) (dismissing compensatory damages portion of a First Amendment claim and holding "that § 1997e(e) precludes compensatory damages for mental and emotional injuries absent a showing of physical injury, regardless of whether the claims at issue are of a constitutional nature or not"). "The First Circuit has suggested, however, that the bar does not apply to nominal and punitive damages." MacEachern, 94 F. Supp. 3d at 67 (citing Kuperman v. Wrenn, 645 F.3d 69, 73 n.5 (1st Cir. 2011); see Peters v. Azzara, No. 15-cv-00025, 2017 WL

4118388, at *5 (D.N.H. Aug. 4, 2017), report and recommendation adopted sub nom. Peters v. NH Dep't of Corr., No. 15-cv-025, 2017 WL 4119160 (D.N.H. Sept. 14, 2017)).

Regardless, therefore, of whether Larocque has alleged physical injuries, the Eighth Amendment claims could at least support punitive damages.  The Court will therefore not dismiss Count II (which, as discussed infra, is an Eighth Amendment claim) on this basis.  See also Jones v. Higgins-O'Brien, No. 16-cv-11666, 2018 WL 935421, at *5 n.2 (D. Mass. Feb. 16, 2018) (declining to dismiss claims for compensatory damages under § 1997e(e) in the absence of physical injury due to the unsettled state of the law).

Having resolved these threshold issues, the Court will now address the merits of each count referenced by the DOC Defendants in their motion to dismiss.

### 1. Count II: 42 U.S.C. § 1983 – Violation of the Eighth and Fourteenth Amendments

#### i. Eighth Amendment – Excessive Use of Force

Larocque's allegations that Defendants Deschene, Wisnewski and Lussier used excessive force when responding to his suicide attempt or, in the alternative, failed to intervene, implicate the Eighth Amendment's prohibition on cruel and unusual punishment.  "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect."  Staples v. Gerry, 923 F.3d 7, 13 (1st Cir. 2019) (quoting Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009)).

With respect to the use of force, "[t]he objective component of an Eighth Amendment claim is . . . contextual and responsive to 'contemporary standards of decency.'"  Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quoting Estelle v. Gamble, 429 U.S. 97, 103); see also Staples, 923 F.3d at 13 ("To prevail on the objective prong, [the plaintiff] must show that 'the alleged

11

wrongdoing was objectively "harmful enough" to establish a constitutional violation.'" (quoting McMillian, 503 U.S. at 8)). "In the excessive force context, . . . [w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." McMillian, 503 U.S. at 9 (citing Whitley v. Albers, 475 U.S. 312, 327 (1986)).

The subjective prong, on the other hand, "turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Staples, 923 F.3d at 13 (quoting Whitley, 475 U.S. at 320–21). As such, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action," McMillian, 503 U.S. at 9, and "de minimis uses of physical force" are not prohibited, "provided that the[y are] . . . not of a sort 'repugnant to the conscience of mankind,'" id. (quoting Whitley, 475 U.S. at 327). That said, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010). "The 'factors' that 'are relevant to that ultimate determination' include 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials,' 'the need for the application of force,' 'the relationship between the need and the amount of force that was used,' 'the extent of the injury inflicted,' and 'any efforts made to temper the severity of a forceful response.'" Staples, 923 F.3d at 13 (quoting Whitley, 475 U.S. at 321).

Here, the Court finds that the facts alleged in the Complaint, which it must accept as true at this stage, sufficiently plead the excessive use of force. Upon entering Larocque's cell and finding him unconscious, Defendants Deschene, Wisnewski, and Lussier "punched his face and head repeatedly and continued to do so until medical staff responded." [Compl. ¶¶ 45, 46].

12

Given that, as pleaded, Larocque was unconscious when the DOC Defendants first entered his cell, the Court can find no discernable justification for the three officers to repeatedly beat him "in a good faith effort to maintain or restore discipline." Staples, 923 F.3d at 13 (quoting Whitley, 475 U.S. at 321). The Court accordingly finds that Larocque has met the subjective standard.[6]

As to the objective prong, the DOC Defendants argue that because only *de minimis* use of force was applied, Larocque cannot prevail on his Eighth Amendment claim. [ECF No. 24 at 30–31]. The DOC Defendants' argument, however, misconstrues what is at issue here — namely whether three officers hitting an unconscious prisoner plausibly pleads that force was applied "maliciously and sadistically for the very purpose of causing harm." McMillian, 503 U.S. at 6 (quoting Whitley, 475 U.S. at 321). The Court finds that it does.

Larocque also alleges that Deschene, Wisnewski, and Lussier's conduct additionally violated his substantive due process rights under the Fourteenth Amendment. See [Compl. ¶¶ 69–71; Opp'n at 9]. The Supreme Court has held that the Eighth Amendment "serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified." Graham, 490 U.S. at 395 n.3 (quoting Whitley, 475

_____

[6] The DOC Defendants reference and attach the disciplinary report authored by Defendant Wisnewski, [Compl. ¶ 55], to their motion to dismiss, [ECF No. 24 at 5–6]; [ECF No.24-9]. Specifically, the disciplinary report indicates that Larocque had engaged in disruptive behavior, to which he ultimately pleaded guilty. [ECF No. 24-9]. To the extent that the DOC Defendants seek to challenge Larocque's version of the events of January 2, 2021, the Court notes that this is a factual dispute, which it cannot resolve at this stage. At this juncture, the Court must accept as true Larocque's allegations and draw all reasonable inferences in his favor. See Armstrong v. White Winston Select Asset Funds, LLC, No. 16-cv-10666, 2020 WL 10316643, at *1 (D. Mass. Mar. 23, 2020) ("[C]redibility determinations are not appropriate at the motion to dismiss stage.").

U.S.at 326–27).  As such, "[a]ny protection that substantive due process affords convicted

prisoners against excessive force is . . . at best redundant of that provided by the Eighth

Amendment."  Id. (internal quotations omitted); see Cnty. of Sacramento v. Lewis, 523 U.S. 833,

841–42 (1998).  In relation to Count II, therefore, substantive due process under the Fourteenth

Amendment has no bearing, and the Court accordingly need not consider it.[7]

### ii.  Eighth Amendment – Failure to Intervene

Under the Eighth Amendment, "[a]n officer may be held liable not only for his personal

use of excessive force, but also for his failure to intervene in appropriate circumstances to protect

an arrestee from the excessive use of force by his fellow officers."  Sanders v. Arseneault, No.

19-cv-12284, 2021 WL 982452, at *6 (D. Mass. Mar. 16, 2021) (quoting Wilson v. Town of

Mendon, 294 F.3d 1, 6 (1st Cir. 2002)); Davis v. Rennie, 264 F.3d 86, 98 (1st Cir. 2001); see

also Doiron v. Edmark, No. 16-cv-00326, 2016 WL 7353908, at *2 (D.N.H. Oct. 26, 2016),

report and recommendation adopted, No. 16-cv-326, 2016 WL 7335598 (D.N.H. Dec. 16, 2016)

("The First Circuit has suggested that the duty to intervene rule applies in the Eighth Amendment

context, when a prison guard has an opportunity to intercede when another guard uses excessive

force on a prisoner." (citing Davis, 264 F.3d at 113)).  In order to prevail on this claim, Larocque

must adequately plead that "a non-participating defendant," Arseneault, 2021 WL 982452, at *6,

was "1) present when excessive force was used; 2) observed the use of excessive force; 3) was in

a position where he or she could realistically prevent that force; and 4) had sufficient time to do

so."  Davis, 264 F.3d at 102 (1st Cir. 2001).  Here, the facts as alleged are insufficient to state a

---

[7] Neither the Complaint nor Larocque's opposition to the motion to dismiss allege a procedural
due process claim under the Fourteenth Amendment.  See generally [Compl.; Opp'n]; see also
[Opp'n at 3].

plausible claim on a failure to intervene theory. Larocque does not allege who the "non-participating defendant" was, and, even more fatally, he offers no factual allegations to indicate that any of the DOC Defendants were in a position to prevent the use of force or had sufficient time to do so. Accordingly, this claim does not carry the day.

### 2. Count III: 42 U.S.C. § 1983 – Failure to Supervise and Train

Larocque alleges that Defendants Mici and Gray are liable for failing to supervise and train staff on how to respond to suicidal prisoners in violation of the Eighth Amendment. [Compl. ¶¶ 72–75; Opp'n at 16–17]. In support of his allegations, Larocque points to the DOJ report published in 2020 which found, among other things, a pattern of failing to provide adequate supervision and mental health care to suicidal prisoners at the MDOC.[8] [ECF No. 1-1 at 3]; see also [Compl. ¶¶ 24–27]. Both Mici and Gray, Larocque contends, were aware of the report's findings. [Compl. ¶ 74]. The DOC Defendants' response is threefold. First, the DOC Defendants argue that the report cannot be used as a basis for Larocque's allegations against Mici and Gray because it expressly states that DOJ "does not serve as a tribunal authorized to make factual findings and legal conclusions binding on, or admissible in, any court." [ECF No. at 24 at 23 (quoting ECF No. 1-1 at 3)]. Second, the DOC Defendants contend that Mici and Gray cannot be held responsible because their conduct is not "affirmatively linked" to that of the other subordinate Defendants. [Id. at 26–28]. Third, with regard to the "failure to train" claim,

---

[8] The DOJ and MDOC ultimately entered into a settlement agreement on December 20, 2022, which Larocque discusses and attaches to the Complaint, though he also states that he does not allege "any substantive claim based on the violation of the DOJ settlement agreement." [Opp'n at 22]. Because, among other things, the settlement agreement took effect after the alleged wrongful conduct at issue here, the Court did not consider it when reaching the conclusions set forth in this order.

the DOC Defendants argue Larocque has failed "to identify what training is at issue, how said training is causally related to the alleged harm, what the supposed deficiencies in the training are and also allege facts establishing that [Mici and Gray] were responsible for such training and deficiencies." [Id. at 28].

"[A] supervisor may not be held liable under section 1983 on the tort theory of *respondeat superior*, nor can a supervisor's section 1983 liability rest solely on his position of authority." Guadalupe-Báez v. Pesquera, 819 F.3d 509, 515 (1st Cir. 2016). Rather, a claim for supervisory liability under Section 1983 "has two elements: first, the plaintiff must show that one of the supervisor's subordinates abridged the plaintiff's constitutional rights . . . [and] . . . [s]econd, the plaintiff must show that the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." Id. at 515–516 (quotations and alterations omitted). "A plaintiff must allege a strong causal connection, or an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor . . . such that the supervisor's conduct led inexorably to the constitutional violation." Penate v. Hanchett, 944 F.3d 358, 367 (1st Cir. 2019) (citation and quotations omitted). "To establish deliberate indifference, a plaintiff must show (1) grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk." Id. At bottom, the "test for liability draws on the long-established principle that notice is a salient consideration in determining the existence of supervisory liability." Id. (citations and quotations omitted). As to the "liability criteria for 'failure to train' claims[, they] are exceptionally stringent." Justiniano v. Walker, No. 15-cv-

11587, 2016 WL 5339722, at *6 (D. Mass. Sept. 22, 2016) (quoting <u>Barker v. City of Boston</u>, 795 F. Supp. 2d 117, 122 (D. Mass. 2011).

As to the first element of supervisory liability, a liberal construction of the Complaint suggests that Larocque is alleging that the subordinate officers violated his Eighth Amendment rights by being deliberately indifferent to a serious medical need, that is his mental health crisis.[9] To establish an Eighth Amendment violation, Larocque must show that (i) he had a serious medical need, the objective prong, and (ii) that Defendants were deliberately indifferent to that serious medical need, the subjective prong. <u>Kosilek v. Spencer</u>, 774 F.3d 63, 82 (1st Cir. 2014); <u>Torraco v. Maloney</u>, 923 F.2d 231, 234 (1st Cir. 1991) (stating that the First Circuit "has recognized that deliberate indifference to an inmate's serious mental health needs violates the eighth amendment"). A medical need is serious if there is a substantial risk of harm if not adequately treated and if the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Kosilek</u>, 774 F.3d at 82 (quoting <u>Gaudreault v. Municipality of Salem</u>, 923 F.2d 203, 208 (1st Cir.1990)).

As to the subjective prong, a plaintiff must plead that the "prison official was aware that a substantial risk of harm existed and that the official nevertheless disregarded that substantial risk of harm." <u>Wittkowski v. Levine</u>, 382 F. Supp. 3d 107, 113 (D. Mass. 2019) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)). Specifically, deliberate indifference requires a

---

[9] The DOC Defendants reference a contract with Wellpath, LLC, a medical provider, seemingly for the proposition that all decisions related to an inmates' medical care are outside the scope of the MDOC. [ECF No. 24 at 3–4]. At issue here, however, is not the quality of care provided, but rather whether DOC Defendants acted with deliberate indifference to Larocque's medical needs when they did not respond to his mental health crisis, alert medical staff, or take other preventative measures that could have reduced the risk of self-harm.

showing "that the failure in treatment was purposeful." Kosilek, 774 F.3d at 83 (citing Estelle, 429 U.S. at 105 (explaining that "an inadvertent failure to provide adequate medical care" is not a constitutional violation). "While deliberate indifference may also be exhibited by a 'wanton disregard' to a prisoner's needs, such disregard must be akin to criminal recklessness, requiring consciousness of 'impending harm, easily preventable.'" Id. (first quoting Battista v. Clarke, 645 F.3d 449, 453 (1st Cir.2011); and then quoting Watson v. Caton, 984 F.2d 537, 540 (1st Cir.1993)). In the context of an inmate's suicidal tendencies, the "defendants must have been aware of a 'strong likelihood, rather than a mere possibility, that self-infliction of harm [could] occur' in order to find them deliberately indifferent." Wittkowski, 382 F. Supp. 3d at 113–14 (quoting Torraco, 923 F.2d at 236); see also Sires v. Berman, 834 F.2d 9, 12 (1st Cir.1987) ("A plaintiff must satisfy two elements to present a viable [Eighth Amendment] claim: he must show a serious medical need, and he must prove the defendant's purposeful indifference thereto.").

Larocque has adequately pleaded that his mental health crisis constituted a serious medical need (the objective prong) and that the need for medical attention was obvious (the subjective prong). He repeatedly alerted prison officials to his deteriorating mental health, expressed suicidal ideation, and gestured self-harm to at least one Doe Defendant. [Compl. ¶¶ 35, 37–40, 42–43]. These facts also suggest that the Doe Defendants were aware of a strong likelihood that Larocque would inflict self-harm. [Id. ¶ 48]. Yet, according to the Complaint, they not only ignored his need for mental health support but also actively encouraged him to inflict self-harm. [Compl. ¶¶ 40, 42]. At the pleading stage, this sufficiently alleges deliberate indifference in violation of Larocque's constitutional rights.

Larocque, with regard to the second element of a supervisory responsibility, adequately — though not by much — alleges that Defendants Mici and Gray failed to protect him from

harm.  Not only was there a grave risk of harm to Larocque given his suicidal ideations, including a known history of suicide attempts, [Compl. ¶ 48], but Gray and Mici "knew of the dangers faced by inmates with mental illnesses," Cox v. Massachusetts Dep't of Corr., 18 F. Supp. 3d 38, 47–48 (D. Mass. 2014), by virtue of the 2020 DOJ report, which specifically addressed MDOC's treatment of incarcerated individuals with mental health needs, [Compl. ¶ 41].  Yet, they seemingly failed to implement and enforce adequate policies, despite being in positions whereby they could have influenced the policies, guidelines, and trainings provided to their subordinate staff.  See [Compl. ¶¶ 9, 11].

In sum, although broad and thinly pleaded, there are sufficient allegations that Defendants Mici and Gray, by virtue of the DOJ report, were aware of the actions of their subordinates and did nothing in response.  Guadalupe-Baez v. Pesquera, 819 F.3d 509, 516–17 (1st Cir. 2016) (holding that a DOJ report that found police officers with the Puerto Rico Police Department had a pattern and practice of using excessive force was sufficient to plead supervisory liability as to the superintendent of the police department); cf. Justiniano v. Walker, No. 15-cv-11587, 2016 WL 5339722, at *6 (D. Mass. Sept. 22, 2016) (finding that plaintiff failed to allege facts that superior was deliberately indifferent to known risks because he directed the court to studies describing shortcomings in the treatment of prisoners with mental health needs elsewhere); see also Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994) ("A causal link may also be forged if there exists a known history of widespread abuse

sufficient to alert a supervisor to ongoing violations.  When the supervisor is on notice and fails

to take corrective action, say, by better training or closer oversight, liability may attach.").[10]

### 3.    Count IV: 42 U.S.C. § 1983 – First Amendment Violation

Larocque further asserts that Defendants Gray and Gerardi refused to investigate the

events of January 2, 2021 in good faith in retaliation for Larocque bringing a lawsuit against the

SBCC.  [Compl. ¶¶ 76–82].

To state a First Amendment retaliation claim, Larocque must plausibly allege that: "1) he

engaged in constitutionally protected conduct, 2) prison officials took adverse action against him,

3) with the intent to retaliate against him for engaging in the constitutionally protected conduct

and 4) he would not have suffered the adverse action 'but for' the prison officials' retaliatory

motive."  Schofield v. Clarke, 769 F. Supp. 2d 42, 47 (D. Mass. 2011).  An adverse action in the

First Amendment context is one that "viewed objectively . . . would have a chilling effect on [the

plaintiff's] exercise of First Amendment rights," Barton v. Clancy, 632 F.3d 9, 29& n.19 (1st

Cir. 2011), or that "would deter persons of 'ordinary firmness' from exercising their

constitutional rights in the future," Starr v. Dube, 334 Fed. App'x. 341, 342 (1st Cir. 2009).

Because prisoner retaliation claims are "'easily fabricated[] and . . . pose a substantial

risk of unwarranted judicial intrusion into matters of general prison administration,' courts must

insist that such claims are bound up in facts, not in the gossamer strands of speculation and

surmise."  Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011) (quoting Bennett v. Goord, 343 F.3d

---

[10] As to the DOC Defendants' claim that the DOJ report cannot serve as a legal basis for
Larocque's supervisory liability claim because it is inadmissible, [ECF No. 24 at 23], the Court
observes that at this stage of the proceedings it need not concern itself with evidentiary
questions.  That said, should this case proceed to summary judgment and/or trial, both parties are
advised to address evidentiary questions surrounding the admissibility of the report.

133, 137 (2d Cir. 2003)).  Further, "even if the [prison] officials had an impermissible reason for the action taken, they may not be held liable if they also had an independent, permissible reason for doing so."  <u>Schofield</u>, 769 F. Supp. 2d at 47.

Although the parties dispute whether Larocque was in fact a party to the lawsuit in question, <u>see</u> [ECF No. 24 at 6–7; Opp'n at 24–26], the Court need not resolve this issue.  The facts as alleged in the Complaint largely consist of conclusory allegations that retaliation occurred without pleading the necessary elements.  <u>See</u> [Compl.; <u>id.</u> ¶¶ 81–82].  Accordingly, Larocque's allegations do not carry the day and Count IV is dismissed.

### 4.  Qualified Immunity

"The Supreme Court has long established that, when sued in their individual capacities, government officials are immune from damages claims unless '(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" <u>Eves v. LePage</u>, 927 F.3d 575, 582–83 (1st Cir. 2019) (quoting <u>District of Columbia v. Wesby</u>, 583 U.S. 48, 62–63 (2018)).  While qualified immunity can be raised in a motion to dismiss, <u>id.</u> at 582 n.5, the DOC Defendants present no legal analysis supporting their argument that they are entitled to qualified immunity at this stage of the proceedings.  <u>See</u> [ECF No. 24 at 35 (stating, without elaboration, that "[t]his case is precisely the type which demands that [DOC] defendants . . . be given qualified immunity because the plaintiff has not made sufficient allegations of constitutional and civil rights violations by the defendants").  Invoking qualified immunity does not mean that a defendant can broadly claim immunity without developed argument.  <u>See</u> <u>Latimore v. Trotman</u>, 14-cv-13378, 2017 WL 3623159, at *10 (D. Mass. Aug. 23, 2017) (denying the Commonwealth's motion to dismiss for lack of sufficiency in briefing qualified immunity at summary judgment stage); <u>see</u> <u>Díaz-Colón v. Fuentes-Agostini</u>,

786 F.3d 144, 149 (1st Cir. 2015) (affirming denial of summary judgment on qualified immunity

for failure to adequately brief and holding: "We share the district court's frustration with the

inadequate briefing submitted on behalf of the defendants.  It is black letter law that we deem

waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed

argument." (citation and quotation omitted)).  Here, because the DOC Defendants have failed to

sufficiently brief qualified immunity, the Court declines to grant the motion to dismiss on this

ground.  Defendants may raise this defense at the summary judgment stage if warranted.

### C.    Count V: Assault and Battery

Defendants Deschene, Wisnewski, and Lussier argue that they are entitled to common-

law immunity under Massachusetts law with respect to the assault and battery claims.  [ECF No.

24 at 32].  "Under [Massachusetts] common law, 'a public official, exercising judgment and

discretion, is not liable for negligence or other error in the making of an official decision if the

official acted in good faith, without malice, and without corruption.'"  Langlois v. Pacheco, No.

16-cv-12109, 2017 WL 2636043, at *7 & n.6 (D. Mass. June 19, 2017) (quoting Nelson v. Salem

State Coll., 845 N.E. 2d 338, 348 (Mass. 2006)).[11]

---

[11] Separately, the First Circuit has held that "[w]here a plaintiff alleges both a § 1983 excessive force claim and common law claims for assault and battery, our determination of the reasonableness of the force used under § 1983 controls our determination of the reasonableness of the force used under the common law assault and battery claims."  Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir. 2010).  As such, "those claims rise and fall together."  Mullen v. Dep't of Corr., 643 F. Supp. 3d 238, 247 (D. Mass. 2022).  Given that the Court has not yet considered the DOC Defendants' qualified immunity claims, which requires an analysis of the reasonableness of force used, and because the DOC Defendants do not argue the merits, the Court declines to discuss the merits of Larocque' battery and assault claims at this stage.

A plain reading of the allegations related to the January 2, 2021 event — the beating of an unconscious prisoner — does not support a finding that Defendants Deschene, Wisnewski, and Lussier acted in good faith.  See Langlois, 2017 WL 2636043, at *7& n.6 ("Even if defendants were immunized from reckless conduct, the complaint adequately pleads at least bad faith and malice. . . .  Thus, at this stage in the litigation, defendants are not protected by common-law immunity.").  Accordingly, the DOC Defendants' motion to dismiss Count V is <u>DENIED</u>.

### D.    Count VI: Intentional Infliction of Emotional Distress

Under Massachusetts law, to assert a claim for intentional infliction of emotional distress ("IIED"), Larocque must allege: "(1) that [DOC Defendants] intended, knew, or should have known that [their] conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe."  <u>Galvin v. U.S. Bank, N.A.</u>, 852 F.3d 146, 161 (1st Cir. 2017) (quoting <u>Polay v. McMahon</u>, Mass. 2014)).  "The standard for making a claim of [IIED] is very high."  <u>Id</u>. (citations and quotations omitted).  "There is no liability even if the defendant acted with an intent which is tortious or even criminal, with malice, or with a degree of aggravation which would entitle the plaintiff to punitive damages for another tort," and "[n]ot even an intent to inflict emotional distress is sufficient."  <u>Id.</u> (citation, quotations, and punctuation omitted).  "Conduct qualifies as extreme and outrageous only if it goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community."  <u>Id.</u> (citation, quotations, and punctuation omitted).  "A judge may grant a motion to dismiss where the conduct alleged in the complaint does not rise to this level."  <u>Id.</u> (citation, quotations, and punctuation omitted).

The DOC Defendants assert that Count VI must be dismissed because Deschene, Wisnewski, and Lussier's conduct is neither extreme nor outrageous and because Larocque has not established that his emotional distress was severe.  [ECF No. 24 at 34–35].  The Court is satisfied that Larocque has met the first three elements: his known history of mental illness and abuse means that the DOC Defendants at least should have known that beating him would likely cause emotional distress, [Compl. ¶48]; their conduct, namely hitting an unconscious prisoner, likely qualifies as falling outside the bounds of decency, [id. ¶¶ 44–45]; and Larocque suffered emotional distress, including depression and loss of sleep, as a result of their conduct, [id. ¶¶ 87, 90].  As to the fourth element, Larocque alleges that he has suffered "severe emotional distress, significant physical injuries, loss of sleep, loss of appetite, depression, anxiety and other manifestations of severe emotional distress."  [Id. ¶ 92].  Although thinly pleaded, given the circumstances of this case, the Court is satisfied that Larocque has sufficiently stated a claim on which relief may be granted.  Accordingly, dismissal as to Count VI is DENIED.

## IV.    CONCLUSION

Accordingly, for the reasons set forth above, DOC Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.  In summary, the surviving claims are Count I (provided the Doe Defendants are identified and served promptly), Count II in relation to the excessive use of force, Count III, Count V, and Count VI.[12]  Further, because the only count

---

[12] As to Larocque's request for sanctions, [Opp'n at 26–27], when moving for sanctions, a party must observe certain procedural requirements as outlined by Rule 11 of the Federal Rules of Civil Procedure.  "The motion 'must be made separately from any other,' and it 'must be served [on the offending attorney or unrepresented party] under [Federal Rule of Civil Procedure] 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.'"  Triantos v. Guaetta & Benson, LLC, 91 F.4th 556, 561 (1st

against him (Count IV) has been dismissed, Defendant Gerardi is dismissed as a Defendant from this action.[13]

        **SO ORDERED.**

March 18, 2025                                  */s/ Allison D. Burroughs*

                                               ALLISON D. BURROUGHS
                                               U.S. DISTRICT JUDGE

---

Cir. 2024) (quoting Fed. R. Civ. P. 11(c)(2)).  Given Larocque's failure to adhere to any of these steps, the Court need not consider Larocque's request.

[13] At this juncture, the Court declines to foreclose any equitable relief, including injunctive relief, which is a remedy available under Section 1983.  Pagan v. Dubois, the case cited by the DOC Defendants to support the contention that Larocque lacks standing for injunctive relief, is distinguishable from the instant case.  894 F. Supp. 45 (D. Mass. 1995); [ECF No. 24 at 13].  There, the court dismissed the action because plaintiffs had suffered no personal harm and therefore lacked standing.  Pagan, 894 F. Supp. at 48.  In contrast, Larocque clearly alleges an injury in fact.